UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SELWYN MILLS

                      Plaintiff,

v.

GERARD TRAVERS, BEVERLY TIMOTHY,
AND RAME AWD,

                      Defendants.

**MEMORANDUM AND ORDER**

20-CV-3035 (LDH) (LB)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Selwyn Mills ("Plaintiff") brings the instant action asserting *Bivens* claims against Gerard Travers, Beverly Timothy (together, "Federal Defendants"), and Rame Awd (collectively, "Defendants"), alleging deliberate indifference to medical needs in violation of the Eighth Amendment of the United States Constitution. Defendants[1] move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[2]

From July 2017 through August 2017, Plaintiff was incarcerated in state prison at SCI-Mahanoy, where he began undergoing prostate tests. (Am. Compl. at 3, ECF No. 50.) In July 2017, Dr. Courtney Rogers examined Plaintiff and found elevated levels of Prostate Specific Antigen (PSA) in his blood. (*Id.*) On August 7, 2017, Dr. Rogers referred Plaintiff to Dr. Mehandra Pujara, an oncology specialist who ordered a second PSA test and a biopsy of Plaintiff's prostate. (*Id.*) In October 2017, Dr. Pujara received Plaintiff's test results, which confirmed that Plaintiff was diagnosed with Stage 3 prostate cancer. (*Id.*) A month later, Dr.

---

[1] The Court takes together the arguments raised by the Federal Defendants and Defendant Awd.
[2] The following facts are taken from Plaintiff's amended complaint and, unless otherwise indicated, are assumed to be true for the purposes of this memorandum and order. (ECF No. 50.)

Pujara provided Plaintiff's test results and diagnosis to Dr. Rogers. (*Id.*) Plaintiff alleges that he was not informed of his diagnosis. (*Id.*)

On November 3, 2017, Plaintiff was transported from state custody at SCI-Mahanoy, in Pennsylvania, to a facility within the Northern District of New York. (*Id.* at 3–4.) On December 7, 2017, Plaintiff was sentenced to 14-months imprisonment to run consecutive to his Pennsylvania sentence. (*Id.* at 4.) Immediately following his sentencing hearing, Plaintiff was transported to Rensselaer County Jail in Troy, New York, where he remained until January 2018. (*Id.*) While in custody at Rensselaer County Jail, Plaintiff informed a female doctor ("Dr Jane Doe") that he underwent two PSA tests, which showed elevated PSA levels, and he was awaiting the results of his prostate biopsy. (*Id.*) Dr. Jane Doe reached out to SCI-Mahanoy twice, via email, but was not provided with a written report of Plaintiff's biopsy. (*Id.*) Dr. Jane Doe performed an independent PSA test and found that Plaintiff's PSA levels were elevated. (*Id.*)

On January 11, 2018, Plaintiff was transferred from Rensselaer County Jail to the Metropolitan Detention Center ("MDC"). (*Id.*) According to the amended complaint, on January 14, 2018, Plaintiff attended an appointment with Defendant Awd, a doctor who provides medical care to inmates at the MDC. (*Id*. at 2, 4.) Plaintiff alleges that he informed Defendant Awd of his recent biopsy and elevated PSA levels. (*Id*. at 4.) One week later, Defendant Awd ordered blood tests, which showed "extremely" elevated PSA levels. (*Id.* at 5.)

After receiving Plaintiff's tests results, Dr. Awd informed Plaintiff, Defendant Travers, the health services administrator at the MDC, and Defendant Timothy, a nurse practitioner who provides medical care to inmates at the MDC. (*Id*. at 2, 5.) Defendant Travers met with Plaintiff to discuss Plaintiff's biopsy and arrange a visit to an outside specialist. (*Id.* at 5.) On March 22, 2018, Plaintiff was taken to Brooklyn Hospital, where he underwent a bone scan, CT

2

scan, and PET scan. (*Id.*) Plaintiff refused a second biopsy because he was concerned about complications. (*Id.*) The medical staff at Brooklyn Hospital indicated to Plaintiff that they would request his biopsy report from MDC staff. (*Id.*) Following Plaintiff's visit at Brooklyn Hospital, the health care staff at MDC contacted SCI-Mahanoy to obtain a copy of Plaintiff's medical records, including Plaintiff's biopsy report. (*Id.*) At that time, the MDC staff did not receive Plaintiff's biopsy report. (*Id.*)

On April 26, 2018, Plaintiff filed a complaint with the captain in charge of MDC's medical department, indicating that he had not received the results of his biopsy. (*Id.* at 6.) The captain contacted SCI-Mahanoy for a copy of the report, which was received on April 27, 2018. (*Id.*) That same day, the captain informed Plaintiff that his test results showed that he had stage 3 prostate cancer. (*Id.*)

On April 28, 2018, Plaintiff met with Defendants Awd, Travers and Timothy, who informed him that he would be transferred to FCI-Butner, a medical facility in North Carolina, to receive treatment for stage 3 prostate cancer. (*Id.*) On May 1, 2018, Plaintiff returned to Brooklyn Hospital, where medical staff discussed his diagnosis and treatment options, which included chemotherapy and "a [p]rostatectomy by robotic procedure." (*Id.*) After Plaintiff returned from the hospital, Defendant Travers informed Plaintiff that Brooklyn Hospital would perform the prostatectomy by robotic procedure and then Plaintiff would be taken to FCI-Butner for post-operative care. (*Id.*) According to the amended complaint, on May 10, 2018, Defendant Timothy told Plaintiff that "he would not be at the MDC long enough to justify the cost associated with prostatectomy by robotic procedure." (*Id.*)

On May 22, 2018, Plaintiff filed a BP-8 Grievance Request for Administrative Remedy, in which Plaintiff complained of an unreasonable delay in receiving treatment for prostate cancer

3

and that he had not received a copy of the results of his biopsy. (*Id.* at 7.) Plaintiff received a response to his BP-8 request on June 1, 2018. (*Id.*) Defendant Travers informed Plaintiff that the medical staff at MDC would continue his work up and treatment until Plaintiff was transferred back to Pennsylvania. (*Id.*) On June 20, 2018, Plaintiff filed a BP-9 Grievance, appealing the denial of his BP-8 request. (*Id.*) On July 16, 2018, without receiving a response to his BP-9 request, Plaintiff was transferred back to SCI-Mahanoy in Pennsylvania. (*Id.*) Plaintiff wrote a letter to the Administration Department at the MDC, requesting the results of his BP-9 request, but he did not receive a response. (*Id.*) Plaintiff then filed a grievance request and lawsuit against SCI-Mahanoy that was eventually dismissed for lack of jurisdiction. (*Id.* at 7–8.)

On August 7, 2018, Plaintiff informed Dr. Pujara, who later informed Dr. Rogers at SCI-Mahanoy, of Plaintiff's recent medical history and that he decided to undergo a prostatectomy by robotic procedure. (*Id.* at 8.) On August 17, 2018, Dr. Mercelli, a urologist at SCI-Mahanoy, informed Plaintiff that he had not received Plaintiff's medical records from the MDC. (*Id.*) About 6 months later, on February 6, 2019, Plaintiff underwent a prostatectomy by robotic procedure. (*Id.*) Plaintiff alleges that he continues to suffer from "excruciating physical, mental, and emotional pain and anguish, including post-traumatic stress." (*Id.*)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the

4

Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION[3]

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, and its progeny, the Supreme Court recognized a constitutional cause of action for damages against federal officers. 403 U.S. 388 (1971). Of particular relevance here, the Supreme Court has found an implied right of action and granted *Bivens* remedies where a plaintiff complained of deliberate indifference to a deceased federal prisoner's medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). "To establish an unconstitutional denial of medical care, a prisoner must prove deliberate indifference to his serious medical needs.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation and modification omitted).

To successfully plead a claim for deliberate indifference, a plaintiff must allege facts sufficient to satisfy both the objective and subjective prongs of the standard. *Id*. *First*, "the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Id.* "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019). *Second*, the plaintiff must allege deliberate indifference, or that the charged official "act[ed] with

---

[3] In Plaintiff's memorandum in opposition to the Federal Defendants' motion to dismiss, Plaintiff acknowledges that although he brought the instant action pursuant to 42 U.S.C. § 1983, the action is properly construed as a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court construes Plaintiff's amended complaint accordingly.

5

a sufficiently culpable state of mind." *Hathaway*, 99 F.3d at 66. Defendants urge the Court to dismiss Plaintiff's deliberate indifference claim on the grounds that Plaintiff failed to plead a deprivation of medical treatment or that Defendants acted with a culpable state of mind. (Defs.' Mem. in Support of Mot. Dismiss ("Defs.' Mem.") at 14, ECF No. 63.)

To satisfy the objective prong, Plaintiff must allege that his underlying medical condition is "sufficiently serious." *See Goris v. Breslin*, 402 F. App'x 582, 584 (2d. Cir 2010). That is, Plaintiff must sufficiently allege that his underlying medical condition is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Id.* (citation and internal quotation omitted). On this point, Defendants concede that prostate cancer "can be a serious medical condition." (Defs.' Mem. at 14.) In turn, Defendants argue that Plaintiff received ongoing treatment, and therefore, the Court should consider the severity of the delay in treatment. (*Id.* at 14–15.). The Court agrees. In cases where a "prisoner is receiving appropriate on-going treatment for his condition, but, instead brings a narrower denial of medical care claim based on a temporary delay or interruption in treatment, the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

Here, Plaintiff alleges that Defendants plainly failed to treat his stage 3 prostate cancer and he did not receive considerable care while incarcerated at the MDC. (Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 2, 4, ECF No. 64.) Indeed, Plaintiff contends that between January 2018 and July 2018, he interacted with the medical staff at the MDC and Brooklyn Hospital, but he did not receive any treatment. (*Id.* at 5.)

Plaintiff's allegations, however, paint a different picture. According to the complaint, Plaintiff arrived at the MDC on January 11, 2018, where he underwent a medical intake

6

screening, during which he informed the MDC medical staff of his recent biopsy and elevated PSA levels. (Am. Compl. at 4.) At the time of Plaintiff's intake screening, he had not received the results of his prostate biopsy. (*Id.* at 3.) A few days later, on January 14, 2018, Plaintiff informed Dr. Awd of his prior PSA tests and biopsy. (*Id.* at 4.) In response, Dr. Awd conducted a PSA test, which once again revealed elevated PSA levels. (*Id.* at 5.) Plaintiff alleges that he met with medical staff on several occasions, he received diagnostic imaging and testing, and he was transferred to Brooklyn Hospital to see a urology specialist. (*Id.*) Plaintiff further alleges that he consulted with Defendants to discuss treatment options, including chemotherapy and prostatectomy by procedure. (*Id.* at 6.) In consultation with medical staff at Brooklyn Hospital, Plaintiff decided he wanted to proceed with a prostatectomy by robotic procedure. (*Id.*) After almost two months, Defendant Travers informed Plaintiff that he could not be held in the BOP for treatment, but MDC would continue Plaintiff's medical work-up and treatment and inform SCI-Mahanoy of his condition. (*Id.* at 7.) Although a procedure was not performed before Plaintiff was transferred back to Pennsylvania, Plaintiff's argument that he was not treated while at the MDC is directly contradicted by the complaint. Accordingly, the Court agrees with Defendants that Plaintiff received ongoing treatment at the MDC.

Where, as here, a plaintiff alleges that he received "on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the [plaintiff's] underlying medical condition alone." *See Goris*, 402 F. App'x at 584–85 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). That is, "in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* (quoting *Smith*, 316

7

F.3d at 187). Accordingly, Defendants correctly argue that the Court must assess "the particular risk of harm faced by [Plaintiff]," rather than focus only on the underlying medical condition. (Defs.' Mem. at 13, citing *Goris,* 402 F. App'x at 585.)

While the Court recognizes that Plaintiff was incarcerated at the MDC for six months without receiving a prostatectomy by robotic procedure, Plaintiffs allegations do not show how Defendants actions worsened his condition or resulted in any specific harm owing to the delay in his treatment. *See Smith*, 316 F.3d at 188–89 (finding the plaintiff failed to present evidence that the alleged conduct resulted in a "permanent or on-going harm to his health, nor did he present any evidence explaining why the absence of actual physical injury was not a relevant factor in assessing the severity of his medical need.")  A mere delay in receiving medical treat does not necessarily rise to the level of deliberate indifference.  The Second Circuit has previously held that "[a]lthough a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, . . . ignored a 'life-threatening and fast-degenerating' condition for three days, … or delayed major surgery for over two years." *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 at *2 (2d Cir. 1999) (internal citations omitted).  No such circumstances exist here.

To be sure, Plaintiff does not allege that he suffered from any exacerbations of his illness or any concrete harm resulting from the delay in his treatment. *See Fox v. Fischer*, 242 F. App'x 759, 760 (2d Cir. 2007) (finding that the plaintiff failed to satisfy the objective prong where plaintiff did not allege that a "change in medication caused harm, if any, sufficiently serious to establish the objective prong of a deliberate indifference claim"); *see also Fleming v. City of New York,* No. 18 Civ. 4866 (GBD), 2020 WL 5522871, at *3 (S.D.N.Y. July 23, 2020) (finding

8

plaintiff sufficiently alleged deliberate indifference where defendant's failure to provide the inmate with his prescribed diet contributed to unsuccessful chemotherapy and a significant drop in the inmate's BMI); *Jones v. Avanzato*, No. 14 Civ. 2044 (NSR), 2016 WL 183565, at *5 (S.D.N.Y. Jan. 13, 2016) (finding that plaintiff's renal failure was advanced by a delay in chemotherapy, which satisfies the objective prong). Plaintiff alleges only that the MDC did not immediately transfer his medical records to SCI-Mahanoy, resulting in further delay of Plaintiff's prostatectomy by robotic procedure. (Am. Compl. at 8.) Presumably stemming from this delay, Plaintiff further alleges that he suffers from "excruciating physical, mental, and emotional pain and anguish, including post-traumatic stress." (*Id.*) Yet, Plaintiff fails to establish any connection between the harm he alleges and the delay in receiving his medical records or treatment. As such, Defendants are ultimately correct that Plaintiff fails to allege facts sufficient to show that any purported delay in receiving treatment worsened his condition. (Defs.' Mem. 14–15.)

Even if the Court were to conclude that Plaintiff satisfied the objective prong, the subjective prong requires Plaintiff to allege that Defendants acted with a sufficiently culpable state of mind. The required state of mind "is the equivalent of criminal recklessness; namely, when the prison official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 99 F.3d at 553. The subjective element of a deliberate indifference claim requires Plaintiff to allege that Defendants were actually aware of a substantial risk that serious inmate harm will result. *Farmer v. Brennan*, 511 U.S. 825, 844–47 (1970). Plaintiff fails to make such a showing.

9

Plaintiff argues that, despite repeatedly expressing concerns, Plaintiff did not receive treatment for his prostate cancer and Defendants failed to promptly transfer his medical records to SCI-Mahanoy. (Pl.'s Opp'n at 4–5.) As detailed above, Plaintiff's amended complaint alleges that he visited medical professionals multiple times, underwent various diagnostic examinations, and ultimately received a proctectomy by robotic procedure, treating his cancer without any alleged complications. (*Id*. at 6–8.) As the Federal Defendants aptly argue, Plaintiff's claims stem from a delay in his receipt of his preferred treatment, not a deliberate indifference to his medical needs. (Defs.' Mem. at 15–16.) And, as Defendant Awd argues, Plaintiff could not be held in federal custody while he received medical treatment, but Plaintiff met with a urological oncologist three weeks after he arrived at SCI-Mahanoy. (Def. Awd. Mem. in Support of Mot. Dismiss at 12, ECF No. 60-1.) Plaintiff fails to allege how these actions demonstrate that any Defendant disregarded an excessive risk to Plaintiff's health, as is required. Accordingly, Plaintiff cannot establish deliberate indifference and his claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss for failure to state a claim are GRANTED, and the amended complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York  
     April 29, 2024

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge